DAVIS et al.

v.

LTV STEEL COMPANY, INC., Appellant; Motorists Mutual
Insurance Company, New–Party Appellee.

[Cite as *Davis v. LTV Steel Co.* (1998), 128 Ohio App.3d 733.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

Nos. 97–T–0184 and 97–T–0185.

Decided June 29, 1998.

*Anthony J. Divenere* and *Tyler L. Mathews*, for appellant.

*Merle D. Evans III*, for new-party appellee.

---

CHRISTLEY, Presiding Judge.

This is an accelerated appeal taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant LTV Steel Company ("LTV") appeals from a declaratory judgment in which the trial court ruled that appellant was not entitled to coverage as an additional insured under a policy issued by appellee, Motorists Mutual Insurance Company ("Motorists"). We affirm.

The facts giving rise to this appeal are as follows. LTV entered into a contract with Shafer Commercial and Industrial Services ("Shafer"), an independent contractor. Pursuant to this contract, Shafer was to perform industrial cleaning at an LTV coke plant in Warren, Ohio. Specifically, Shafer contracted to use high-pressure water hoses to clean two tar sump pumps and to vacuum out the tar sump.

On June 7, 1995, two Shafer employees, Daniel W. Davis ("Davis") and Michael J. Booker ("Booker"), were engaged in the cleaning process. Davis was blasting the tar sump pumps with water, while Booker was vacuuming the tar pit itself. The area of the plant where Davis and Booker were working was approximately fifteen feet away from an ammonia storage dike in which a steam siphon was located.

From time to time, the steam would build up within the siphon. When this happened, an LTV employee would have to turn a valve on the siphon manually in order to let it cool down. On June 7, William Mills ("Mills"), a process engineer at the LTV plant, noticed that the steam siphon had overheated and needed to be turned off. However, rather than turning the valve himself or ordering an LTV employee to do so, Mills directed Davis to shut off the siphon.

Davis attempted to comply with Mills's instructions, but while walking toward the steam siphon, he fell into an open dike siphon sump and injured himself. Booker was injured in the same manner when he ran over to provide assistance to Davis. Subsequently, it was discovered that a grate that was supposed to cover the dike siphon sump had been removed.

In the contract between Shafer and LTV, there was an indemnification clause by which Shafer agreed to defend and indemnify LTV against most claims arising out of the performance of the industrial cleaning work. In addition, Shafer also agreed to purchase comprehensive general liability insurance naming LTV as an additional insured. At the time of the accident, Shafer was insured under such a commercial general liability policy issued by Motorists. Pursuant to this policy, LTV was declared to be an additional insured.

Davis and Booker subsequently filed personal injury actions against LTV. Since the actions involved common questions of law and fact, they were consolidated in the trial court under the authority of Civ.R. 42(A). On March 25, 1997, Motorists filed a motion to intervene as a new-party defendant pursuant to Civ.R. 24. The motion was granted on May 21, 1997. Motorists then counterclaimed against Davis and Booker and cross-claimed against LTV. In the cross-claim, Motorists sought a declaratory judgment stating that LTV was not entitled to coverage under the general liability policy issued by Motorists to Shafer.

LTV and Motorists extensively briefed the insurance issues raised by the declaratory judgment request. In addition, the parties submitted various products of discovery, including the depositions of Davis, Booker, and Mills.

On September 12, 1997, the trial court issued a judgment entry in which it found the following: (1) Motorists had no contractual duty to defend LTV because the liability, if any, of LTV did not arise out of the operations of Shafer; (2) LTV was not entitled to coverage as an additional insured under the policy

issued by Motorists to Shafer; and (3) the indemnification clause in the contract between Shafer and LTV was void as a matter of law pursuant to R.C. 2305.31. Because the judgment did not dispose of all the claims or parties to the litigation, the trial court included an express determination that there was no just reason for delay, as authorized by Civ.R. 54(B).

From this judgment, LTV filed a timely appeal with this court, in which it asserts the following assignment of error:

"The trial court erred as a matter of law when it granted declaratory relief in favor of Motorists Mutual Insurance Company and against LTV Steel Company, Inc."

Although LTV assigned only one error, two issues are subsumed within its argument that the trial court erred by granting declaratory relief favoring Motorists. Consequently, we will address each issue individually.[1]

■ The first issue is whether LTV is entitled to coverage as an additional insured under the language used in the policy endorsement. The general liability policy issued by Motorists to Shafer contained the following definition:

"The word 'insured' means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II)."

LTV was not originally an "insured" under Section II of the policy. Pursuant to the contract between LTV and Shafer, however, Shafer secured an additional-insured endorsement naming LTV as an additional insured entity. The scope of coverage afforded by the endorsement was defined in this way:

"WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to *liability arising out of your operations or premises owned by or rented to you*." (Emphasis added.)

The words "you" and "your" refer to the named insured in the overall policy, to wit, Shafer. The policy, however, did not define what was meant by "arising out of" Shafer's operations.

LTV argues that the language of the additional-insured endorsement should be construed broadly so that LTV was protected from all liability arising out of or connected to the operations of Shafer, regardless of whether the liability was attributable to the negligence of LTV, Shafer, a third party, or some combination

---

1. As a preliminary matter, we note that the question of law being appealed concerns the scope of coverage under an insurance clause. Thus, our focus will be on a legal analysis of that question, as opposed to a factual analysis of possible negligence.

thereof. We disagree with this interpretation of the additional-insured endorsement.

The plain language of the endorsement extended coverage to LTV only with respect to liability arising out of Shafer's operations or premises owned by or rented to Shafer. The phrase "arising out of your operations" in the endorsement was intended to protect LTV from any liability for the negligence of Shafer's employees who would be performing the industrial cleaning at the LTV plant. See, *e.g., Buckeye Union Ins. Co. v. Zavarella Bros. Constr. Co.* (1997), 121 Ohio App.3d 147, 151–152, 699 N.E.2d 127, 130–131. In other words, the purpose of the additional-insured endorsement was to protect the additional insured (*i.e.,* LTV) from being vicariously liable for the tortious acts of the named insured (*i.e.,* Shafer).

The evidence adduced during discovery was uncontroverted that the dike siphon sump into which Davis and Booker fell was located in an area of the industrial plant that was under the exclusive control of LTV on the day of the accident. There is no serious issue that the closing of the valve in question was not contemplated as part of Shafer's duties pursuant to its contract with LTV. Further, the need to close the valve on the day of the accident was coincidental to the cleaning services being performed by Shafer's employees. There was no dispute that LTV hired Shafer to clean and vacuum the tar sump and its pumps; Shafer did not contract to do anything related to the dike siphon sump.

Under these circumstances, the express language of the policy did not afford coverage to LTV for its own negligence. After reviewing the case at bar, it is apparent that the trial court correctly determined that the injuries to Davis and Booker were not attributable to any negligence arising out of Shafer's performance of its industrial cleaning operations at the LTV plant. Thus, LTV was not entitled to coverage under the additional-insured endorsement contained in the policy issued by Motorists to Shafer.

The second issue raised by LTV relates to the validity of the indemnification clause contained in its contract with Shafer.[2] The trial court concluded that the

---

**2.** The clause read in part:

"Contractor expressly agrees to protect, defend, indemnify and save harmless Owner (including any of its affiliated companies) and their employees and agents from and against any and all liability, loss, damages, costs and expenses of every character whatsoever (including attorneys' fees), claims, actions, suits, fines, penalties, and demands for any loss or damage to property or injuries to persons, including death, sustained by Owner, Contractor, their agents or subcontractors or their respective employees or by any other party, caused by, resulting from, arising out of, or occurring in connection with the performance of the Work or any Extra Work or the furnishing of any material by Contractor or any of its agents, servants, subcontractors, invitees, licensees or their respective employees under the Contract or inci-

clause as written was unenforceable due to the operation of R.C. 2305.31. This statute provides in part:

"A *covenant, promise, agreement, or understanding in, or in connection with* or collateral to, a contract or agreement relative to *the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance,* including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, *purporting to indemnify the promisee,* its independent contractors, agents, employees, or indemnities *against liability for damages arising out of bodily injury to persons or damage to property initiated or proximately caused by or resulting from the negligence of the promisee,* its independent contractors, agents, employees, or indemnities *is against public policy and is void.*" (Emphasis added.)

The Supreme Court of Ohio has held that R.C. 2305.31 prohibits indemnity agreements in certain construction-related contracts, whereby the promisor agrees to indemnify the promisee for damages caused by or resulting from the negligence of the promisee, regardless of whether such negligence is sole or concurrent. *Kendall v. U.S. Dismantling Co.* (1985), 20 Ohio St.3d 61, 20 OBR 360, 485 N.E.2d 1047, paragraph one of the syllabus. Under the express terms of R.C. 2305.31, the General Assembly has legislated that indemnity agreements in which the promisor agrees to indemnify the promisee for the promisee's negligence are against public policy in the construction-related contracts described by the statute.

■ LTV first contends that R.C. 2305.31 is not applicable to the indemnification clause in the case *sub judice.* According to LTV, the statute was not triggered, because the Shafer employees were performing industrial cleaning, not construction.

We disagree. By its express terms, R.C. 2305.31 applies not merely to construction, but also to the maintenance of a building, structure, highway, road, appurtenance, or appliance. In this case, Davis and Booker were obviously engaged in the maintenance of an appliance when they were cleaning the tar sump pumps and vacuuming the tar pit. See *Lamb v. Armco, Inc.* (1986), 34 Ohio App.3d 288, 291, 31 OBR 610, 612–613, 518 N.E.2d 53, 56 (defining the word "appliance" for purposes of R.C. 2305.31 to mean an accessory, fixture, or attachment to real estate). Other courts have reached similar conclusions as to what constitutes an "appliance." Cf. *Waddell v. LTV Steel Co., Inc.* (1997), 124

---

dental to or appertaining thereto, except to the extent such injury, damage or loss is due to the willful misconduct of Owner, its agents or employees (other than Contractor)."

Ohio App.3d 350, 357, 706 N.E.2d 363, 367 (holding that a kiln at a steel plant was an appliance under R.C. 2305.31).

■    LTV next argues that even if the indemnification provision in the instant case fell within the scope of R.C. 2305.31, the clause still did not violate the statute because it did not require Shafer to hold LTV harmless for negligent acts committed by LTV. In support of this position, LTV cites *Libbey–Owens–Ford Co. v. Henry Gurtzweiler, Inc.* (Apr. 25, 1997), Lucas App. No. L–96–103, unreported, 1997 WL 220987.

Upon review, we determine that *Libbey–Owens–Ford* is inapposite as applied to the present case. In *Libbey–Owens–Ford*, the independent contractor agreed to defend and indemnify Libbey–Owens–Ford for any liability "relating to or arising out of the negligent acts or omissions or willful misconduct by Contractor." *Libbey–Owens–Ford* at 2, fn. 1. In other words, the indemnification clause specifically referred to the negligence or willful misconduct of the independent contractor. This took it outside the scope of the R.C. 2305.31 prohibition against agreements by which the promisor agrees to indemnify the promisee for damages caused by or resulting from the negligence of the promisee.

In the case at hand, the indemnification clause did not expressly limit itself to negligent acts or willful misconduct on the part of Shafer. Instead, the provision stipulated that Shafer agreed to indemnify LTV against any damage to property or injuries to persons arising out of the performance of the cleaning work, except to the extent that such damage or injury was due to the willful misconduct of LTV. Thus, in contrast to the indemnification clause in *Libbey–Owens–Ford*, the clause in the present case is barred by R.C. 2305.31.

Based on the foregoing analysis, appellant's assignment of error is not well taken. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., concurs.

WILLIAM M. O'NEILL, J., dissents.