JOURNAL ENTRY AND OPINION
{¶ 1} Sunoco, Inc. (R M), f.k.a. Sun Refining Marketing Company ("Sunoco"), appeals from an order of Judge Jose A. Villanueva that granted summary judgment to Motorists Mutual Insurance Company ("Motorists") on Sunoco's third-party complaint for legal defense. Sunoco claims Motorists was obligated to provide it a defense against Justin Sprouse's claims of employer intentional tort and negligence, but Motorists claims no defense was required under the terms of the commercial liability policy it issued to Sunoco's franchisee, and Sprouse's employer, Michael W. Kall. We affirm.
 {¶ 2} Sprouse was employed at Kall's Sunoco service station in North Royalton and lost part of his thumb while using the station's automobile "rotary lift." An expert who inspected the lift reported that part of a locking lever had been deliberately cut off. He opined that the alteration proximately caused Sprouse's injury, and that the defect should have been observed and corrected by whoever was responsible for maintaining the equipment. Thereafter, Sprouse sued both Kall and Sunoco under a theory of employer intentional tort, and alleged that he was employed by either or both of them.
 {¶ 3} Kall's commercial liability policy, issued by Motorists, identified Sunoco as an additional insured, "but only with respect to [its] liability because of acts or omissions of an insured." The policy also stated that Motorists would defend an insured party against suit, but stated that the duty to defend would not extend to any suit seeking damages "to which this insurance does not apply." Motorists initially undertook the defense of both Kall and Sunoco, but sent each a letter reserving its rights to deny coverage at a later date.
 {¶ 4} Almost a year later, Sprouse moved for leave to amend his complaint, in which he stated that discovery had revealed that Sunoco was not his employer. He sought to file an additional count alleging negligence against Sunoco, because he claimed it owned the premises and was responsible for maintaining them, even though they were leased to Kall. The motion was granted and the first count of the amended complaint alleged employer intentional tort, omitted any reference to Sunoco, and only claimed that Sprouse was employed by Kall, but retained other paragraphs that referred to defendants in the plural, instead of referring to Kall in the singular.
 {¶ 5} The second count of the amended complaint alleged negligence against Sunoco and stated that Sunoco "owned, maintained, altered, manufactured, installed, inspected or otherwise negligently handled the rotary lift involved in [Sprouse's] injury." The count also alleged that Sunoco "or its agents" knew or should have known of the danger caused by the defective rotary lift, although the complaint did not identify the alleged agents.
 {¶ 6} After the motion to amend was filed, but before it was granted, Motorists notified Sunoco that it would no longer represent the company in the suit. It stated that the amended complaint no longer alleged a claim against Sunoco that was based on the acts or omissions of Kall and, therefore, Motorists no longer had a duty to defend. Sunoco then filed a third-party complaint that sought a declaratory judgment and damages for breach of contract and breach of the duty of good faith, and Motorists filed an answer and counterclaim seeking a declaration that it had no duty to defend.
 {¶ 7} Six months later Sprouse's claims against Kall were settled and dismissed with prejudice. On the same date, Motorists filed a motion for summary judgment regarding its duty to defend Sunoco, and Sunoco responded with a motion for summary judgment on the same issue. At the final pretrial conference, Sprouse stated that the first count of the complaint was fully settled because it applied only to Kall, and he further stated that the "agents" referred to in count two of the complaint did not refer to Kall or to any of his employees. The judge ruled that Motorists had no duty to defend Sunoco after Sprouse filed his amended complaint and, therefore, it did not breach the insurance contract. He granted Motorists' motion for summary judgment, denied Sunoco's motion, and Sunoco then settled with Sprouse for the claims in count two of the complaint.
 {¶ 8} Sunoco states a single assignment of error, attached in an appendix to this opinion, which asserts the judge erred in finding that the insurance policy did not require Motorists to defend it against the allegations made in Sprouse's amended complaint. We review the grant of summary judgment de novo, using the same standard as the trial judge, which requires grant of the motion if there is no dispute of material fact and the moving party is entitled to judgment as a matter of law.[1]
 {¶ 9} The "additional insured" provision in the policy at issue is intended to protect Sunoco from vicarious liability for the acts or omissions of Kall, the primary insured.[2] The provision limited Motorists' duty to defend Sunoco to allegations that would make Sunoco liable based upon Kall's conduct, and the duty to defend did not extend to any claim based on Sunoco's independent acts or omissions. Therefore, we must determine whether Sprouse's amended complaint alleged any theory of recovery that would make Sunoco liable based on Kall's conduct.
 {¶ 10} An insurer's duty to defend first depends upon the "scope of the allegations of the complaint * * *, and where the complaint brings the action within the coverage of the policy the insurer is required to make a defense, regardless of the ultimate outcome of the action or its liability to the insured."[3]
If the complaint is ambiguous or does not clearly state a covered claim against the insured, the "scope of allegations" includes any claim "potentially or arguably within the policy coverage[.]"[4] In such a case, the obligation to defend continues until the complaint is confined to claims that are not covered under the policy.[5] However, even when the insurer agrees to defend groundless, false, or fraudulent claims, "if the conduct alleged in a complaint is indisputably outside the scope of coverage, there is no duty to defend."[6] The focus is not on whether liability can be shown, but on whether the conduct giving rise to the claim would be covered under the policy.[7]
 {¶ 11} Because Kall was Sprouse's employer, he could not be held liable for mere negligence; instead, Sprouse would have to prove that Kall's conducted amounted to an intentional tort.[8] Therefore, because secondary liability attaches only when the primary actor is liable, Sunoco could be vicariously liable only for Kall's intentional tort, and not for his negligence.[9]
 {¶ 12} Sunoco argues that the nature of Sprouse's allegations were in doubt until the final pretrial conference, when he stated that the first count had been fully settled and that the second count's reference to Sunoco's "agents" did not include Kall or his employees.[10] Sunoco claims that the first count arguably stated a claim against it even after Sprouse amended the complaint to allege that Kall alone was his employer, because other paragraphs in the count still referred to defendants in the plural, thus suggesting that Sprouse was somehow seeking to hold Sunoco liable on the employer claim as well. This argument fails, however, because the inconsistent use of singular and plural forms[11] does not adequately signal an attempt to hold a franchisor secondarily liable on an employer intentional tort claim against its franchisee. Even under the liberal pleading standards of Civ.R. 8, count one of Sprouse's amended complaint does not state such a claim against Sunoco.
 {¶ 13} In order to prove vicarious liability for a workplace intentional tort, Sprouse needed to allege and prove that Kall was Sunoco's agent, and that Sunoco was secondarily liable for Kall's intentional tort, rather than for his negligence. Although evidence that Sunoco had control of Kall's daily operations could prove agency,[12] the complaint made no allegation that Kall was Sunoco's agent, nor did it allege such control. Even if Sprouse had made such a claim, in order to show Sunoco's liability for Kall's intentional tort, he would have to prove that Kall was acting either for Sunoco's benefit or at Sunoco's instruction.[13] Again, Sprouse made no such allegation and presented no such evidence.
 {¶ 14} Although we express no opinion on the allegations necessary to state a claim for vicarious liability against a franchisor for a franchisee employer's intentional tort, the claim is sufficiently complex that it will not be alleged by the mere inconsistent use of plural pronouns shown here. Therefore, the first count of the amended complaint did not state a claim against Sunoco, and Motorists had no duty to defend it on that count.
 {¶ 15} Sunoco next claims that the second count was not clearly based on its independent acts of negligence because the evidence showed that the claim was based on Kall's acts or omissions in maintaining the defective lift. It claims that the franchise agreement required Kall to notify it if any equipment needed repair, and that Kall did not advise it of the lift's defective condition. Sunoco claims, therefore, that the negligence count necessarily alleges it is secondarily liable for Kall's negligence. We disagree.
 {¶ 16} Sunoco has adopted mistaken views of both the negligence count and the nature of secondary liability. As noted supra, an "additional insured" provision is intended to protect the additional party from liability for the acts or omissions of the primary insured — that is, Sunoco is protected in situations where it is secondarily liable for Kall's conduct.[14]
Secondary liability arises when one party is held responsible based solely on its relationship with the responsible actor.[15] However, secondary liability is distinguishable from joint liability, which arises when two or more parties are held liable for action causing injury. When a party commits or participates in an act causing injury, its liability is no longer passive and secondary, but becomes active and primary.[16]
A party held secondarily liable has an action for indemnity; a joint actor must resort to an action for contribution.[17]
 {¶ 17} Sunoco argues that it is only secondarily liable because Kall breached his contractual duty to notify it that the lift needed maintenance. However, Sprouse presented evidence in the summary judgment proceedings that suggested the lift had been in the defective condition for several years, and he claimed that Sunoco knew or should have known of the defective condition regardless of whether Kall notified it. Therefore, his claim against Sunoco alleged an active failure to inspect or maintain Kall's premises, rather than alleging secondary liability based on Kall's failure to do so.
 {¶ 18} Sunoco contends that Kall is responsible for the defective condition of the lift, and that its alleged "failure to notice" the condition is secondary to Kall's more egregious act. Such an argument, however, implies the parties were joint actors, rather than arguing that Sunoco is liable solely for Kall's actions. A less serious act is still grounds for alleging active, rather than secondary, liability. Sprouse's complaint necessarily alleged that Sunoco had an independent duty to notice and correct the condition of the lift, and that claim was outside Motorists' duty to defend.
 {¶ 19} Although some opinions use the somewhat misleading phrase "passive negligence,"[18] this does not mean that liability is imposed for any negligent, albeit "passive," breach of duty of the secondarily liable party, and the opinions do not use the term that way. For clarity's sake, however, it is more accurate to state that secondary liability is imputed to a party because of its relationship with the liable actor, rather than because the secondarily liable party is "passively" negligent. Even though Sunoco's liability might have been based on its relatively passive failure to notice the defect, this omission nonetheless constitutes "active" negligence if the duty to notice existed.
 {¶ 20} Furthermore, Sunoco's assertion that it had no duty to maintain Kall's premises does not show that the claim is based on Kall's conduct. The existence of defenses to an independent negligence claim shows only that Sunoco might have been found not liable had it continued to assert those defenses against Sprouse. Such an argument does not change the fact that the complaint alleged that Sunoco breached an independent duty of care with respect to the lift. Regardless of its merits, Sprouse's claim against Sunoco was still based on its independent acts of negligence. Because the negligence claim against Sunoco was not based on Kall's conduct, Motorists had no duty to defend. The assignment of error is overruled.
 {¶ 21} The judgment is affirmed.
Judgment affirmed.
Frank D. Celebrezze Jr., and Timothy E. McMonagle, JJ., concur.
 APPENDIX — ASSIGNMENT OF ERROR "In granting motorists Mutual Insurance Company's("Motorists") motion for Summary Judgment as to Sunoco, Inc. ® M)'S ("Sunoco") third-party complaint and motorists' counterclaimfor declaratory relief and failing to grant Sunoco's motion forpartial Summary Judgment, the trial court erred as a matter oflaw by finding that motorists did not owe a duty to defend Sunocoas an "additional insured" under the policy of insurance."
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Civ.R. 56(C); Bonacorsi v. Wheeling Lake Erie Ry. Co.,95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶ 24.
[2] Davis v. LTV Steel Co., Inc. (1998), 128 Ohio App.3d 733,737, 716 N.E.2d 766.
[3] Motorists Mut. Ins. Co. v. Trainor (1973),33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, paragraph two of the syllabus.
[4] Willoughby Hills v. Cincinnati Ins. Co. (1984),9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, syllabus.
[5] Id. at 179.
[6] Cincinnati Ins. Co. v. Anders, 99 Ohio St.3d 156,2003-Ohio-3048, 789 N.E.2d 1094, at ¶ 51.
[7] Id.
[8] Blankenship v. Cincinnati Milacron Chems., Inc. (1982),69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572.
[9] See Wells v. Spirit Fabricating Ltd. (1996),113 Ohio App.3d 282, 293-294, 680 N.E.2d 1046 (stating general rule that secondary party's liability is dependent on primary tortfeasor's liability).
[10] Although the claims against Kall were settled and dismissed on November 7, 2002, the parties did not include the settlement terms and, therefore, we are unaware whether those terms included a full release of Kall or a more general covenant not to sue. See Diamond v. Davis Bakery, Inc. (1966),8 Ohio St.2d 38, 37 O.O.2d 383, 222 N.E.2d 430, syllabus (covenant not to sue primary party that does not amount to full release will not bar suit against secondary party).
[11] One paragraph states that "[d]efendants knew or should have known that its operations were hazardous * * *." (Emphasis added.)
[12] Hamlin v. Motel Six (June 9, 2000), Miami App. No. 2000-CA-2.
[13] Byrd v. Faber (1991), 57 Ohio St.3d 56, 58-59,565 N.E.2d 584; Moses v. The Budd Co. (Dec. 3, 1993), Wood App. No. 92WD041.
[14] Davis v. LTV Steel Co., Inc., supra.
[15] Reynolds v. Physicians Ins. Co. of Ohio,68 Ohio St.3d 14, 16, 1993-Ohio-57, 623 N.E.2d 30.
[16] Id.; Mahathiraj v. Columbia Gas of Ohio, Inc. (1992),84 Ohio App.3d 554, 563-564, 617 N.E.2d 737.
[17] Id.
[18] Mahathiraj, supra.