OPINION
{¶ 1} Appellant, Debbie Hiller, the executor of the estate of Nora Price, appeals from the judgment entry of the Trumbull County Court of Common Pleas awarding appellee, American Casualty Company, summary judgment. For the reasons herein, we affirm.
 {¶ 2} On April 19, 1992, Nora Price and her husband, Alexander Price, were killed when a vehicle driven by Rhonda Coy ran a stop sign and struck the motorcycle they were riding. At the time of the accident, Ms. Price was a passenger on the bike, which was owned and driven by Mr. Price. During her lifetime, Ms. Price was employed as a registered nurse. At the time of her death, she was the named insured on a "Professional Nurses Liability" insurance policy issued by appellee.
 {¶ 3} Ms. Coy, the tortfeasor, had a personal auto policy with Royal Insurance with limits of $100,000 per accident. Each decedent's estate received $37,500 from the tortfeasor's insurer.
 {¶ 4} In August of 2003, appellant, as representative of the estates of Nora Price and Alexander Price, filed a multi-count complaint against multiple defendants for personal injuries, wrongful death, and declaratory judgment. In the complaint appellant alleged she was entitled to UIM benefits for injuries allegedly sustained when the tortfeasor, an underinsured driver, struck the motorcycle the Price's were riding.
 {¶ 5} After the Ohio Supreme Court released its opinion inWestfield Ins. Co. v. Galatis (2003), 100 Ohio St.3d 216,2003-Ohio-5849, most of the defendants were either voluntarily dismissed or awarded summary judgment. In September of 2004, appellant amended her complaint seeking a declaration that she was entitled to UM/UIM coverage under the professional nurses' liability policy issued by appellee. The complaint included claims for breach of contract, loss of consortium, funeral and burial expense, and bad faith.
 {¶ 6} On November 3, 2004, appellant moved for summary judgment. On December 3, 2004, appellee filed its motion in opposition and "cross-motion" for summary judgment. On August 19, 2005, the trial court denied appellant's motion for summary judgment, granted appellee's motion for summary judgment, and entered a declaratory judgment that appellant was not entitled to UM/UIM coverage under the policy issued to Nora Price because the policy was not a motor vehicle liability policy and thus UM/UIM coverage did not arise as a matter of law. The trial court also awarded summary judgment in appellee's favor on the bad faith claim. While the judgment entry did not rule upon appellant's claims for consortium or funeral and burial expenses, the court declared there was no just cause for delay pursuant to Civ.R. 54(B). This appeal followed.
 {¶ 7} Appellant asserts the following assignments of error:
 {¶ 8} "[1.] The trial court erred in granting Appellee's motion for summary judgment and denying appellant's motion for summary judgment because the personal liability policy issued to Nora Price by American Casualty Company provided automobile liability coverage, thereby making the policy a motor vehicle policy pursuant to O.R.C. 2927.18 for which an offering of UM/UIM coverage was mandatory, and as such, UM/UIM coverage arises by operation of law.
 {¶ 9} "[2.] The trial court erred, as a matter of law, by concluding that appellant was not entitled to underinsured motorists bodily injury coverage pursuant to the personal liability policy issued by appellee to Nora Price.
 {¶ 10} "[3.] The trial court erred in granting appellee's motion for summary judgment with respect to appellant's bad faith claim.
 {¶ 11} "[4.] ACC has not been prejudiced by "late notice of the claim" nor by the estate's settlement with the tortfeasor."
 {¶ 12} Pursuant to Civ.R. 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Moreover, "summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C).
 {¶ 13} An insurance policy is a contract and a court's construction of a contract is a matter of law. SouthsideRiver-Rail Terminal Inc. v. Crum Forster Underwriters of Ohio,157 Ohio App.3d 325, 331, 2004-Ohio-2723. When the parties' intent is evident from the clear and unambiguous language of the agreement, a court must enforce the terms as written and give the words their ordinary meaning. Hybud EquIp. Co. v. Sphere DrakeIns. Co. (1992), 64 Ohio St.3d 657, 665. However, where the language is ambiguous, the contract must be strictly construed against the insurer. Faruque v. Provident Life Acc. Ins. Co.
(1987), 31 Ohio St.3d 34, syllabus.
 {¶ 14} Appellant's first and second assignments of error are interrelated and we will therefore address them jointly. Under her first two assigned errors, appellant asserts the contract in question did not explicitly exclude her claim from coverage and thus, by implication, she is entitled to coverage. Moreover, because the insurance policy did not include UM/UIM coverage, appellant maintains such coverage would arise as a matter of law under the relevant version of R.C. 3937.18.
 {¶ 15} Appellee contends the policy is a professional liability policy covering certain damages arising out of specified claims, none of which involve automobile claims. Further, according to appellee, even if all conceivable scenarios involving automobile liability are not excluded, appellee asserts one cannot infer general automobile coverage from an exclusion clause.
 {¶ 16} The contract at issue was a "professional nurses' liability" insurance policy. The policy provided three basic coverages: "Nurses Professional Liability Coverage," "Personal Injury Coverage," and "Personal Liability Coverage." The professional liability coverage insured "you" for "amounts * * * which you become legally obligated to pay as a result of injury or damages * * * caused by a medical incident arising out of professional services by you or anyone for whose professional services you are legally responsible."
 {¶ 17} The personal injury endorsement covered malicious prosecution, false arrest, libel, and similar injuries arising out of the decedent's professional services.
 {¶ 18} Finally, the personal liability coverage insured "you" for "all amounts * * * which you become legally obligated to pay as a result of injury or damage. * * * caused by your non-business activities" and medical expenses for injuries incurred by persons "at your insured location with your permission," or persons off the premises, if the injury "arises out of" a condition on the premise, or is "caused by" non-business activities, a residence employee in the course of his or her duties, or an animal under the insured's care. The policy further provided the coverage for injury or damage was "intended to supplement any other available coverage, including but not limited to Homeowners and Personal Liability Insurance."
 {¶ 19} The policy also contained specific exclusions to coverage. Particularly germane are the exclusions addressing injuries or damages involving autos. The professional liability coverage excluded:
 {¶ 20} "* * * [i]njury or damage * * * arising out of the ownership, maintenance, use or entrustment of others of any * * * auto * * * owned, operated by, rented or loaned to you. Use includes operation and loading or unloading."
 {¶ 21} The personal liability coverage excluded injury or damage:
 {¶ 22} "arising out of an auto, mobile equipment, watercraft or aircraft which * * * you own, take care of, operate, load or unload, lease or rent, or entrust to others; [or] * * * is loaned to you or is operated loaded or unloaded, for you by an employee in the course of employment by you."
 {¶ 23} "You" or "your" is defined in the policy as:
 {¶ 24} "A. the named insured shown on the Declarations;
 {¶ 25} "B. the following residents of your household, as respects non-business activities:
 {¶ 26} "1. your relatives;
 {¶ 27} "* * *."
 {¶ 28} As the accident in question did not occur in the context of the decedent's professional activities, we shall devote our attention to the personal liability coverage section. We first note, the policy does not expressly provide for general or limited automobile liability coverage. In fact, the personal liability coverage only insures (1) amounts the insured is legally required to pay for injuries caused by her non-business activities and (2) medical expenses for injuries incurred by persons, off business premises, caused by non-business activities. The decedent's accident does not fit within the coverage explicitly circumscribed by the policy.
 {¶ 29} Moreover, while the policy does not provide a universal exclusion for claims arising from automobile accidents, we believe appellant's particular claim falls squarely within the express exclusion pertaining to personal liability coverage. That is, the policy excludes certain claims for damages arising out of automobiles "you own, take care of, operate, load or unload, lease or rent, or entrust to others[,]" etc. As indicated supra, "you" includes "your relatives." Although Ms. Price did not own the motorcycle on which she was a passenger the day of the accident, her husband did. Because a relative owned the vehicle at issue, Ms. Price was excluded from coverage under appellee's policy as a matter of law. We therefore hold the trial court properly granted summary judgment in appellee's favor.
 {¶ 30} However, assuming arguendo, a material issue of fact exists regarding whether the decedent is entitled to coverage under the policy, appellant's claim would still fail. To wit, appellant is seeking UM/UIM coverage under the policy. Although the policy did not offer such coverage, former R.C. 3937.18(A)(1) required all "automobile liability or motor vehicle liability" policies to provide UM/UIM coverage. Where an "automobile liability or motor vehicle liability" policy did not so provide, coverage arose "by operation of law in the amount equal to the liability coverage of the policy." Selander v. Erie Ins. Grp.,85 Ohio St.3d 541, 54, 1999-Ohio-287. Thus, the critical issue is whether the contract in question can be construed as an "automobile liability or motor vehicle liability" insurance policy. We hold it cannot.
 {¶ 31} "`The type of policy is determined by the type of coverage provided, not by the label affixed by the insurer.'" Id, at 545, citing, St. Paul Fire Marine Ins. Co. v. Gilmore
(1991), 168 Ariz. 159. Without this functional approach to construing insurance contracts, insurers could dodge legal obligations by merely changing the title of the policy. Id. However, a policy will not be construed as an "automobile or motor vehicle liability policy of insurance" where it includes only "incidental" motor vehicle coverage, i.e., where the motor vehicle coverage is "remote from and insignificant to the type of overall coverage the policy provide[s]." Hillyer v. State Farm,97 Ohio St.3d 411, 416, 2002-Ohio-6662; see, also, Davidson v.Motorists Mutual Ins. Co., 91 Ohio St.3d 262, 2001-Ohio-36.
 {¶ 32} At the time the instant contract was signed, R.C.4509.01(L) defined "motor vehicle liability policy," in relevant part, as:[1]
 {¶ 33} "an `owner's policy' or an `operator's policy' of liability insurance, certified as provided in section 4509.46 or4509.47 of the Revised Code as proof of financial responsibility, * * *."
 {¶ 34} R.C. 4509.46, the section applicable to this matter, states:
 {¶ 35} "Proof of financial responsibility may be furnished by filing with the registrar of motor vehicles the written certificate of any insurance carrier authorized to do business in this state certifying that there is in effect a motor-vehicle liability policy for the benefit of the person to furnish proof of financial responsibility."
 {¶ 36} The statute requires the certificate to also "designate by explicit description or by appropriate reference all motor vehicles covered unless the policy is issued to a person who is not the owner of a motor vehicle."
 {¶ 37} There is no evidence in the record that the policy in question was certified as proof of financial responsibility as set forth above. Owing to the paucity of evidence and argument on this point, we may not rely upon R.C. 4509.01(L) as a guide to "classifying" the instant policy.
 {¶ 38} However, assuming primary motor vehicle coverage implicitly arises under certain select scenarios, we believe such limited coverage would be "incidental" to the express coverage set forth in the policy.[2] Davidson, supra. The policy at issue is a professional liability policy and provides coverage for personal liability and personal injury under certain circumstances. It does not include coverage for liability arising out of the use of motor vehicles generally.[3] At best, the policy implicitly covers a narrow class of accident scenarios incidental to the express, primary coverage set forth in the policy. As such, the motor vehicle liability coverage is "remote from and insignificant to the type of overall coverage the policy provided," Hillyar, supra, and insufficient to transform the policy into an "automobile or motor vehicle liability policy" as a matter of law. The trial court did not err in drawing its conclusion.
 {¶ 39} One final matter bears mention: Appellee asserts that even were we to conclude the policy in question could be reasonably construed as an "automobile liability or motor vehicle liability policy," appellant failed to bring her claims within the proper statutory window.
 {¶ 40} Typically, the statute of limitations for a breach of contract action is 15 years. R.C. 2305.06. However, in "an action upon a contract not in writing, express or implied, or upon aliability created by statute other that forfeiture or penalty, * * *" the action "shall be brought within six years after the cause thereof accrued." R.C. 2305.07. (Emphasis added.)
 {¶ 41} Appellee argues UM/UIM coverage could arise under the instant contract only by operation of R.C. 3937.18. As such, appellant's claims are barred by R.C. 2305.07. Our research has revealed no case law applying R.C. 2305.07 to claims involving UM/UIM coverage. We believe this absence is telling and hold claims for UM/UIM coverage, while statutorily derivative, are contingent upon a written agreement and thus subject to the standard limitations period on contracts. In essence, an underlying written insurance policy is sine qua non to trigger UM/UIM coverage. Had the underlying written agreement never existed, appellant's assertions would have no legal foundation. As the instant action is based upon a written contract, it is subject to the fifteen-year statute of limitations generally afforded actions sounding in breach. See, Hammock v. TheCincinnati Ins. Co., 1st Dist. No. C-020783, 2003-Ohio-5090, at ¶ 28.
 {¶ 42} That said, appellant's first two assigned errors are nevertheless overruled.
 {¶ 43} Appellant's third assignment of error argues the trial court erred in granting appellee's motion for summary judgment on her bad faith claim.
 {¶ 44} An insurer has a duty to act in good faith in processing claims for its insured. A breach of this duty gives rise to an action in tort. Hoskins v. Aetna Life Ins. Co.
(1983), 6 Ohio St.3d 272, paragraph one of the syllabus. However, an insurer does not act in bad faith where its decision to deny a claim is reasonably justified. Zoppo v. Homestead Ins. Co.
(1994), 71 Ohio St.3d 552, 554. Given our analysis of appellant's first and second assignments of error, we hold the trial court did not err in awarding appellee summary judgment on her bad faith claim. Appellant's third assignment of error lacks merit.
 {¶ 45} Under her fourth assignment of error, appellant argues appellee was not prejudiced by "late notice" nor by the estate's settlement with the tortfeasor.
 {¶ 46} The inquiry into whether an insurer was prejudiced by an insured's late notice is meaningful only to the extent the insurer may be liable to the insured for damages under the contract of insurance. Because we hold appellant is not entitled to coverage as a matter of law, any discussion of the issue of notice is purely academic and therefore moot. See, Allstate Ins.Co. v. Long, 11th Dist. Nos. 2001-P-0038 2001-P-0039, 2003-Ohio-61, at ¶ 18. Thus, appellant's final assignment of error is not well taken.
 {¶ 47} For the foregoing reasons, appellant's four assignments of error are overruled and the judgment entry of the Trumbull County Court of Common Pleas is hereby affirmed.
Ford, P.J., O'Neill, J., concur.
[1] R.C. 3937.18(L) was added to the UM/UIM coverage statute in 1997 (see 1997 H 261) and provided: "`automobile liability or motor vehicle liability policy of insurance' means either of the following: (1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of [R.C.] 4509.01, for owners or operators of the motor vehicles specifically identified in the policy of insurance;" and "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
[2] For instance, coverage might arise where the insured is injured in an accident while occupying a "non-owned vehicle."
[3] In Davidson, the Supreme Court of Ohio deemed this a salient basis for its determination that a homeowner's insurance policy could not be considered a motor vehicle liability policy. The court reasoned that polices which are not labeled "motor vehicle liability policies" may still be so categorized where there is express liability coverage arising from the use of automobiles "subject to vehicle registration and designed for and are used for transporting people on a public highway." Id. at 268. In the instant matter, the contract in question contains no express liability coverage arising from the use of automobiles.