CURRIER, Admr.;  Erie Insurance Exchange, Appellee,

v.

PENN–OHIO LOGISTICS et al.;  American Steel City
Industrial Leasing, Inc. et al., Appellants.

[Cite as *Currier v. Penn–Ohio Logistics*, 186 Ohio App.3d 249, 2010-Ohio-195.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2009–T–0049.

Decided Jan. 22, 2010.

250

Gallagher, Sharp, Fulton & Norman, Mark A. Greer, Gary L. Nicholson, and Timothy J. Fitzgerald, for appellee.

Harrington, Hoppe & Mitchell, Ltd., Kevin P. Murphy, and Mathew G. Vansuch; and Keating, Keating & Kuzman and Leo W. Keating, for appellants.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellant, American Steel City Industrial Leasing, Inc. ("American"), appeals the judgment of the Trumbull County Court of Common Pleas granting the motion for summary judgment of appellee, Erie Insurance Exchange. At issue is whether Erie was obligated to provide a defense and indemnity to American.

{¶ 2} In November 2005, American purchased a 750,000-square-foot industrial complex on Henricks Road in Austintown, Ohio. The complex was formerly owned by Youngstown Steel Door Company. On April 4, 2006, American leased buildings 23, 23A, 25, 25A, 27, and 29 of the complex to Penn–Ohio Logistics. Raymond Queen was employed as a crane operator by Penn–Ohio. On August 29, 2006, Queen was at work unloading steel bundles from a truck using an overhead crane and stacking them on the floor of the building. He stacked over 800,000 pounds of steel on the floor. Due to the weight of the steel, the floor on which Queen was working collapsed into the basement below. Queen suffered extensive injuries in the fall, which ultimately resulted in his death on August 31, 2006.

{¶ 3} On August 30, 2007, Julianna Currier, administrator of the estate of Queen, filed a wrongful-death action against Penn–Ohio and American, alleging negligence against both and also alleging an employer intentional tort against Penn–Ohio. On October 11, 2007, Erie filed a motion to intervene for purposes of filing a declaratory-judgment action seeking a determination that it had no duty to defend or indemnify either defendant. On November 16, 2007, the trial court granted Erie's motion to intervene. Thereafter, the parties engaged in discovery.

{¶ 4} Subsequently, Penn–Ohio filed a motion for summary judgment against the estate; Erie filed motions for summary judgment against Penn–Ohio and American; and American also filed a motion for summary judgment against the estate. Thereafter, the estate voluntarily dismissed its claims against Penn–Ohio.

{¶ 5} The trial court ruled on the parties' summary-judgment motions in its judgment dated April 14, 2009. With respect to American's motion, the court noted that the lease between American and Penn–Ohio granted to Penn–Ohio exclusive possession of the leased premises. While the evidence demonstrated that American's owner William Marsteller was often on site and had the right under the lease to inspect the leased premises and to make rules for the building, the court found that this did not affect Penn–Ohio's exclusive right to control the premises. The court further found that because American was a lessor out of possession and control of the leased premises, it owed no duty to Penn–Ohio or its employees regarding the condition of the premises. The court therefore granted summary judgment in favor of American on the estate's negligence claim against it.

{¶ 6} With respect to Erie's motions for summary judgment, the court found that the additional-insured coverage, which Penn–Ohio obtained for American pursuant to the parties' lease, covered American only for vicarious liability resulting from Penn–Ohio's negligence and not for American's independent acts of negligence. The court found that since the only claim in the complaint against American was based on its alleged independent acts of negligence, rather than vicarious liability, American was not entitled to coverage under the policy as an additional insured. The trial court thus entered summary judgment in favor of Erie on its motions.

{¶ 7} American appeals the trial court's summary judgment in favor of Erie, asserting the following as its sole assignment of error:

{¶ 8} "The trial court erred to the prejudice of defendant-appellant in granting summary judgment to intervening-plaintiff Erie Insurance Exchange."

{¶ 9} Summary judgment is a procedural device intended to terminate litigation and to avoid trial when there is nothing to try. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358, 604 N.E.2d 138. This court has held that summary

judgment is proper when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Frano v. Red Robin Internatl., Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, 907 N.E.2d 796, ¶ 12, citing *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068.

{¶ 10} The party seeking summary judgment on the ground that the nonmoving party cannot prove his case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264.

{¶ 11} The moving party must point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his claim. Id. at 293, 662 N.E.2d 264.

{¶ 12} If this initial burden is not met, the motion for summary judgment must be denied. Id. However, if the moving party has satisfied his initial burden, the nonmoving party then has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial, and if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against him.

{¶ 13} Since a trial court's decision whether to grant summary judgment involves only questions of law, we conduct a de novo review of the trial court's judgment. *DiSanto v. Safeco Ins. of Am.*, 168 Ohio App.3d 649, 2006-Ohio-4940, 861 N.E.2d 573, ¶ 41. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. *Brown v. Cty. Commrs. of Scioto Cty.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 14} "An insurance policy is a contract and a court's construction of a contract is a matter of law." *Hiller v. OHIC Ins. Co.*, 11th Dist. No. 2005–T–0112, 2006-Ohio-4536, 2006 WL 2528701, at ¶ 13. When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Servs. Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, at paragraph one of the syllabus. We look at the plain and ordinary meaning of the language used in the policy unless another

meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, at paragraph two of the syllabus. When the language of a written contract is clear, a court determines the intent of the parties from the writing itself and does not construe or interpret the contract. Id. at 246, 7 O.O.3d 403, 374 N.E.2d 146. A contract is unambiguous if it can be given a definite legal meaning. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.

{¶ 15} It is well settled that a court may construe an insurance contract only when it is ambiguous, i.e., when its terms are reasonably susceptible of more than one interpretation. *Alexander.* A court has the duty to enforce an insurance contract as made by the parties and not to rewrite contract terms that are unambiguous under the guise of judicial construction. *Bending v. Metro. Life Ins. Co.* (1944), 74 Ohio App. 182, 187, 29 O.O. 319, 58 N.E.2d 71.

{¶ 16} An insurer's duty to defend first depends upon the "scope of the allegations of the complaint * * *, and where the complaint brings the action within the coverage of the policy the insurer is required to make a defense, regardless of the ultimate outcome of the action or its liability to the insured." *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, at paragraph two of the syllabus.

{¶ 17} Here, the lease required Penn–Ohio to maintain a comprehensive general liability insurance policy and to include American as an additional insured on its policy. Pursuant to the lease, Penn–Ohio purchased an insurance policy from Erie, which listed American as an additional insured. The policy was in effect on August 29, 2006, the date of the plaintiff's loss. The policy included an additional-insured endorsement, which provided: "WHO IS AN INSURED * * * is amended to include [American] as an insured but only with respect to liability arising out of [Penn–Ohio's] operations or premises * * * rented to [Penn–Ohio]." The policy also lists the warehouse rented to Penn–Ohio as the insured premises.

{¶ 18} The policy itself does not define the phrase "liability arising out of [Penn–Ohio's] operations or premises * * * rented to [Penn–Ohio.]" Erie argues that the additional-insured endorsement insured American only for vicarious liability, since the endorsement provides that coverage applies only to liability "arising out of" the named insured's [Penn–Ohio's] operations or premises. Erie further argues that because the complaint alleged that American was liable only for its independent acts of negligence, rather than for vicarious liability, American was not entitled to coverage as an additional insured.

{¶ 19} In contrast, American argues that the endorsement provides coverage in two separate situations. It argues that the phrase "arising out of [Penn–Ohio's]

operations" refers to vicarious liability. American argues that the phrase "arising out of premises rented to [Penn–Ohio]" also provides coverage for American's independent acts of negligence occurring on the leased premises.

{¶ 20} It is manifest that vicarious or secondary liability attaches only to the extent that the primary actor is liable. *Sprouse v. Kall,* 8th Dist. No. 82388, 2004-Ohio-353, 2004 WL 170451, at ¶ 11. Since Penn–Ohio, as Queen's employer, could be liable to him only for an employer intentional tort, *Blankenship v. Cincinnati Milacron Chems., Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572, American could be vicariously liable only for Penn–Ohio's employer intentional tort and not for negligence. American does not seek coverage for its vicarious liability. Instead, American argues that it was entitled to coverage under the premises portion of the endorsement for its independent acts of negligence because they allegedly occurred on the leased premises.

{¶ 21} Named insureds often include additional insureds by endorsement to the named insured's policy. This is generally done in order to comply with a contract between the named insured and the entity to be added as an additional insured. For example, as in this case, commercial landlords are frequently added to their tenants' insurance policies as additional insureds. Ohio Insurance Coverage (2008) 184. "Often the purpose of the additional insured endorsements is to protect the additional insured against claims of vicarious liability, i.e., liability based entirely upon the relationship between the parties, as opposed to any active negligence on the part of the additional insured." Id. This makes sense for both the named insured and the additional insured. A negligence-free commercial landlord, for instance, invariably is concerned about being held liable for the negligence of its tenant. That landlord should be able to demand coverage from the tenant's insurer because that insurer can offer the coverage either at no additional cost or by a modest increase in premium, since covering the landlord's vicarious liability does not increase the insurer's liability exposure. The amount of the loss remains the same regardless of the number of parties contributing to it. Id.

{¶ 22} "[A]n 'additional insured' provision is intended to protect the additional party from liability for the acts or omissions of the primary insured—that is, [the additional insured] is protected in situations where it is secondarily liable for [the named insured's] conduct. Secondary liability arises when one party is held responsible based solely on its relationship with the responsible actor." (Citations omitted.) *Sprouse,* 2004-Ohio-353, 2004 WL 170451, at ¶ 16.

{¶ 23} This court considered virtually the same language as in the instant lease in *Davis v. LTV Steel Co., Inc.* (1998), 128 Ohio App.3d 733, 716 N.E.2d 766. In that case, LTV hired a contractor, Shafer, to perform industrial cleaning at LTV's plant in Warren. The contractor was obligated by the parties' contract to include

LTV as an additional insured under the contractor's insurance policy. The additional-insured endorsement covered the additional insured, "but only with respect to liability arising out of [Shafer's] operations or premises * * * rented to [Shafer.]" This court held:

{¶ 24} "The plain language of the endorsement extended coverage to LTV only with respect to liability arising out of Shafer's operations or premises * * * rented to Shafer. The phrase 'arising out of your operations' in the endorsement was intended to protect LTV from any liability for the negligence of Shafer's employees who would be performing the industrial cleaning at the LTV plant. See, e.g., *Buckeye Union Ins. Co. v. Zavarella Bros. Const. Co.* (1997), 121 Ohio App.3d 147, 151–152, 699 N.E.2d 127, 130–131. In other words, the purpose of the additional-insured endorsement was to protect the additional insured (i.e., LTV) from being vicariously liable for the tortious acts of the named insured (i.e., Shafer)." *Davis* at 737, 716 N.E.2d 766.

{¶ 25} The Eighth District adopted our holding in *Davis* in *Sprouse, supra.* In that case the additional-insured endorsement identified [the property owner] as an additional insured, "but only with respect to [its] liability because of acts or omissions of [the named insured]." 2004-Ohio-353, 2004 WL 170451. In citing *Davis,* the court in *Sprouse* held: "The 'additional insured' provision in the policy at issue is intended to protect [the owner] from vicarious liability for the acts or omissions * * * of [the primary insured]. The provision limited Motorists' duty to defend [the owner] to allegations that would make [it] liable based upon [the named insured's] conduct, and *the duty to defend did not extend to any claim based on [the owner's] independent acts or omissions.*" (Emphasis added.) Id. at ¶ 9.

{¶ 26} American argues that *Davis* does not apply here, because American does not seek coverage for liability arising out of Penn–Ohio's operations. American argues that in addition to vicarious liability that arises from the named insured's operations, the additional-insured endorsement here also provides coverage for American's independent acts of negligence committed on Penn–Ohio's premises. Appellant does not cite any case law in support of this contention. Further, we do not agree with American's argument that the additional-insured endorsement also provides coverage for American's independent acts of negligence. The following reasons provide strong support for the trial court's finding that the policy provided coverage for American solely for its vicarious liability.

{¶ 27} First, the term "arising out of" relates to both Penn–Ohio's operations and also to the premises leased to Penn–Ohio. Thus, coverage is to be provided to American, but it is limited in both instances to situations where its liability "arises out of" American's relationship with Penn–Ohio. This is the essence of vicarious liability.

{¶ 28} Second, while the total premium for Penn–Ohio's insurance policy was $14,062, Erie charged Penn–Ohio the nominal amount of $30 to include American as an additional insured. This demonstrates that the parties did not intend to insure American for its independent acts of negligence.

{¶ 29} Third, in order for the coverage urged by American to be provided, the endorsement would have to indicate that American was to be an insured "with respect to its independent acts of negligence" that "occur on Penn–Ohio's leased premises." However, neither of these terms appears in the endorsement. For us to arrive at the construction American seeks, we would have to include these additional terms in the endorsement. Since the parties did not agree to those terms and the endorsement has a definite meaning without them, we are unwilling and legally unable to rewrite the contract to include them.

{¶ 30} Fourth, as noted above, the plaintiff's claim against American was based on its independent acts of negligence, not the leased premises, and therefore the plaintiff's claim against American is not within the scope of the additional-insured endorsement.

{¶ 31} Because the endorsement clearly and unambiguously provided additional-insured coverage to American only for its vicarious liability arising out of Penn–Ohio's operations or the premises rented to Penn–Ohio, and the plaintiff's only claim against American was based on its alleged independent acts of negligence, we hold that the trial court did not err in finding that Erie's policy did not provide coverage to American.

{¶ 32} Finally, appellant argues that Erie was estopped to deny it coverage. The argument is based on Marsteller's affidavit in which he stated that he told Erie's agent Thomas Litman that he wanted American to be included as an additional insured. Marsteller further stated that Litman said that the policy would provide "full coverage" and that he believed that the coverage provided to American would be the same as that provided to Penn–Ohio.

{¶ 33} Under the doctrine of equitable estoppel, relief is precluded when one party induces another to believe that certain facts are true and the other party changes his position in reasonable reliance on those facts to his detriment. *Bank One Trust Co., N.A. v. LaCour* (1999), 131 Ohio App.3d 48, 55, 721 N.E.2d 491. Therefore, equitable estoppel requires that the proponent prove four elements: (1) that the adverse party made a factual misrepresentation, (2) that the misrepresentation was misleading, (3) that the misrepresentation induced actual reliance, which was reasonable and in good faith, and (4) that the proponent suffered detriment due to the reliance. *Doe v. Blue Cross/Blue Shield of Ohio* (1992) 79 Ohio App.3d 369, 379, 607 N.E.2d 492.

{¶ 34} American, however, never argued before the trial court that Erie was estopped to deny it coverage. American therefore failed to preserve the issue for appeal. *Mtge. Electronic Registration Sys., Inc. v. Petry,* 11th Dist. No. 2008–P–0016, 2008-Ohio-5323, 2008 WL 4561151, at ¶ 20–22.

{¶ 35} Further, Erie's coverage was spelled out in a written insurance policy. Where the terms of an insurance policy are clear and unambiguous, parol evidence is inadmissible to interpret its terms. *Sherock v. Ohio Mun. League Joint Self–Ins. Pool,* 11th Dist. No. 2003–T–0022, 2004-Ohio-1515, 2004 WL 605105, at ¶ 16–18. Since we hold that the terms of the insurance contract are clear and unambiguous, Litman's testimony was inadmissible to vary the terms of the policy.

{¶ 36} Appellant's assignment of error is not well taken.

{¶ 37} For the reasons stated in the opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Judgment affirmed.

TRAPP, P.J., and CANNON, J., concur.