[Cite as *Blue Water Condominium Assn., Inc. v. Motorists Mut. Ins. Co.*, 2025-Ohio-772.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Blue Water Condominium
Association, Inc., et al.

Court of Appeals Nos.  S-24-009
S-24-010

Appellants

Trial Court No.  23 CV 249

v.

Motorists Mutual Insurance
Company, et al.

**DECISION AND JUDGMENT**

Appellee

Decided:  March 7, 2025

* * * * *

Steven M. Ott and Ari M. Goldstein, for
appellant, Blue Water Condominium Association, Inc.

Dennis R. Fogarty, Matthew P. Baringer, Ryan J. Kun,
for appellant, Zimmerman Remodeling and Construction, LLC

Jennifer K. Norstrom and Jacob A. Lentsch, for appellee

* * * * *

**MAYLE, J.**

**{¶ 1}** In this consolidated appeal, plaintiff-appellant, Blue Water Condominium

Association, Inc., and defendant-appellant, Zimmerman Remodeling and Construction,

LLC, appeal the March 20, 2024 judgment of the Sandusky Court of Common Pleas,

granting summary judgment in favor of defendant-appellee, Motorists Mutual Insurance Company. For the following reasons, we affirm.

## I. Background

{¶ 2} According to the amended complaint filed by Blue Water Condominium Association, Blue Water hired Zimmerman Remodeling and Construction, LLC "to perform weatherization activities" on the siding of 18 of its buildings. Zimmerman agreed to remove the existing siding and install CertainTeed WeatherBoard, a concrete fiber lap board siding. The project was completed in July of 2011. At some point after the project was completed, Blue Water identified what it claims was defective workmanship relating to the siding installation, including "but not limited to" the "improper storage of materials, improper attachment of cement fiber lap board siding, improper nailing of the concrete fiber lap siding, incorrect lap board spacing, incorrect nails used, improper caulking, improper or nonexistent flashing around windows, and failure to cut holes in the building wrap for vents."

{¶ 3} On August 20, 2008, in contemplation of the work that was going to be performed, Blue Water and Zimmerman agreed that Zimmerman would purchase a commercial general liability insurance policy naming Blue Water "an additional insured for claims caused in whole or in part by [Zimmerman's] acts or omissions during [Zimmerman's] completed operations." Zimmerman procured a CGL policy with Motorists Mutual Insurance Company. According to Blue Water's amended complaint, coverage is available under that Motorists policy for the damages it allegedly sustained.

2.

Its amended complaint seeks a declaration to that effect. The amended complaint also alleges claims for damages against Zimmerman under theories of both negligence and breach of contract.

{¶ 4} Blue Water and Motorists filed cross-motions for summary judgment. As set forth in its motion and in its response to Motorists' motion, Blue Water claimed that by agreement with Zimmerman, it was named an additional insured under the CGL policy purchased by Zimmerman. It explained that Zimmerman's faulty installation of siding repeatedly exposed the condominiums to the harsh winds and rain of the Lake Erie Shore and caused water intrusion that resulted in damage to the condominiums. Blue Water acknowledged that Zimmerman's work itself was not an accident and, therefore, not an "occurrence" covered by the CGL policy. However, it insisted that the water intrusion that resulted from Zimmerman's faulty workmanship was accidental and gave rise to consequential risks and derivative damages that *are* covered under the policy as an occurrence. It maintained that water caused its damages—not the improper siding— however, it acknowledged that proper installation would have prevented the collection of rainwater. Blue Water denied that any exclusion applied to preclude coverage. Zimmerman also argued in favor of coverage, and its position was largely consistent with Blue Water's.

{¶ 5} Motorists argued that Blue Water's complaint alleged that Zimmerman's workmanship was faulty, and under the policy, claims for faulty workmanship are not claims for "property damage" caused by an "occurrence." It claimed that because

3.

coverage under the policy is triggered by an "occurrence," Blue Water cannot recover under the policy. It maintained that Blue Water's motion for summary judgment was devoid of any allegation or evidence of consequential damages. Motorists denied that Blue Water was an additional insured for purposes of making a first-party property damage claim and emphasized that additional insured status applied only for liability alleged by third parties. It argued alternatively that even if additional insured status applied here, Blue Water still could not recover under the policy because of applicable policy exclusions. Finally, Motorists insisted that it owed no duty under the policy to indemnify or defend Zimmerman.

{¶ 6} In its reply in support of its motion for summary judgment, Blue Water insisted that it presented evidence of its damages in discovery. In its reply, Motorists reiterated that Blue Water had not provided actual, admissible evidence of its damages.

{¶ 7} The trial court concluded that this case is controlled by *Westfield Ins. Co. v. Custom Agri Sys.*, 2012-Ohio-4712, where the court held that claims of defective construction or workmanship brought by a property owner are not claims for property damage caused by an occurrence under a commercial general liability policy. It found that "[t]here is nothing compelling argued by Plaintiff or Defendant Zimmerman in this case that differentiates the issues here." In a subsequent judgment, it concluded that Motorists owed no duty to defend or indemnify Zimmerman under its commercial insurance policy No. 33.276956-10E for the claims asserted by Blue Water.

4.

{¶ 8} Blue Water and Zimmerman appealed. Blue Water assigns the following errors for our review:

> I. The Trial Court erred by failing to consider Blue Water's consequential damages resulting from Zimmerman-Remodeling and Construction, LLC's (hereinafter Zimmerman") faulty workmanship an occurrence under the commercial general liability policy issued by Motorists.

> II. The Trial Court erred when it held that a claim of defective workmanship was not an occurrence.

{¶ 9} Zimmerman assigns the following errors for our review:

(1) The trial court erred by granting Appellee's Motion for Summary Judgment because Appellant Blue Water is an additional insured under Motorists' policy with Zimmerman.

(2) The trial court erred by granting Appellee's Motion for Summary Judgment because Motorists has a duty to defend Zimmerman.

## II. Law and Analysis

{¶ 10} In its assignment of errors, Blue Water argues that in granting summary judgment to Motorists and against Blue Water, the trial court erred in failing to consider its claim that it was seeking insurance coverage for consequential damages that resulted from Zimmerman's faulty workmanship and by holding instead that defective workmanship was not an "occurrence" under the policy. Zimmerman argues that the trial court erred in granting summary judgment to Motorists because Blue Water was an additional insured under the policy. It further claims that the trial court erred in finding that Motorists owed no duty to defend it.

5.

{¶ 11} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129 (9th Dist. 1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67 (1978), Civ.R. 56(C).

{¶ 12} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304 (6th Dist. 1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826 (8th Dist. 1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

{¶ 13} This matter involves the interpretation of an insurance policy. "An insurance policy is a contract between the insurer and the insured." *Ward v. United*

6.

*Foundries, Inc.,* 2011-Ohio-3176, ¶ 18, citing *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 2006-Ohio-6551, ¶ 23. "Generally, courts interpret insurance policies in accordance with the same rules applied in interpreting other types of contracts." *G & K Mgt. Servs., Inc. v. Owners Ins. Co.,* 2014-Ohio-5497, ¶ 19 (5th Dist.), citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.,* 64 Ohio St.3d 657, 665 (1992). We must give effect to the parties' intent as reflected by the language used, considering the contract as a whole. *Motorists Mut. Ins. Co. v. Ironics, Inc.,* 2022-Ohio-841, ¶ 8. "We apply the plain meaning of the policy's language 'unless another meaning is clearly apparent from the contents of the policy.'" *Id.,* quoting *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus. "'[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.'" *Ironics* at ¶ 14, quoting *Alexander* at 246.

{¶ 14} The party seeking coverage bears the burden of showing both loss and coverage under a contract of insurance. *Sharonville v. Am. Emps. Ins. Co.*, 2006-Ohio-2180, ¶ 19. The insurer bears the burden of proving that an exclusion applies. *Neal-Pettit v. Lahman*, 2010-Ohio-1829, ¶ 19. Whether a claim is covered under the terms of an insurance policy is a question of law for the court. *G & K Mgt. Servs.* at ¶ 19 (5th Dist.).

7.

**{¶ 15}** With these principles in mind, we address Blue Water and Zimmerman's assignments of error, but we do so out of order.

## A. Defective Workmanship

**{¶ 16}** In its second assignment of error, Blue Water argues that damage caused by defective workmanship is an "occurrence" under the CGL policy. It maintains that as recognized by the dissent in *Westfield Ins. Co.*, 2012-Ohio-4712, ¶ 31 (Pfeiffer, J., dissenting), "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." Blue Water claims that faulty workmanship falls directly into the category of a deliberate act performed negligently. And here, it insists, no one intended or expected that Zimmerman would perform subpar work that would allow water to intrude into the buildings. Blue Water points to cases from Illinois, Indiana, and the Tenth Circuit that are consistent with its position, but acknowledges that those cases are not binding here. It claims, however, that if the policy is interpreted in a manner consistent with Motorists' position, the exclusions that address business risks would be rendered superfluous.

**{¶ 17}** Motorists responds that the Ohio Supreme Court determined in *Westfield Ins. Co. v. Custom Agri Sys.*, 2012-Ohio-4712, ¶ 19, that a property owner's claims for defective construction or faulty workmanship are not claims for "property damage" caused by an "occurrence." It maintains that there is coverage under the policy for property damage *only* when the property damage is caused by an "occurrence."

8.

**{¶ 18}** Motorists explains that under the policy, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." It contends that the gravamen of Blue Water's amended complaint is that Zimmerman's faulty workmanship caused damage to Blue Water's buildings. Motorists points to the allegations in the amended complaint, which identified several examples of "Zimmerman's defective workmanship," and stated claims against Zimmerman for (1) failure to perform in a workmanlike manner; (2) breach of contract for failing to properly install the siding; (3) negligence arising out of Zimmerman's failure to use proper construction techniques and failure to provide labor, materials, and related services free of material defects in a workmanlike manner"; and (4) negligence per se for failing to secure the siding with the proper nails. It insists that Blue Water's claims are for faulty workmanship, and are, therefore, not an "occurrence" under the policy.

**{¶ 19}** The CGL policy contains the following terms relevant to the claims here:

SECTION I - COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies . . . . We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "property damage" to which this insurance does not apply.

      . . .

9.

b.  This insurance applies to . . . "property damage" only if

(1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The . . . "property damage" occurs during the policy period.

SECTION V — DEFINITIONS

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
    . . .

17. "Property damage" means

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

{¶ 20} In *Westfield,* 2012-Ohio-4712, the Ohio Supreme Court interpreted a CGL policy with terms identical to the policy at issue and considered whether a claim of defective construction or workmanship brought by a property owner is a claim for "property damage" caused by an "occurrence."  The Court observed that CGL policies "do not insure an insured's work itself."  *Id.* at ¶ 10.  It recognized that the definition of an "occurrence" reflects principles of fortuity and found that faulty workmanship claims generally are not covered because they are not fortuitous.  It concluded that the policy did not provide coverage for a claim of defective construction or workmanship.  The Court reaffirmed *Westfield* in *Ohio N. Univ. v. Charles Constr. Services, Inc.,* 2018-Ohio-4057,

10.

¶ 35, and clarified that property damage caused by a subcontractor's faulty work is also "not fortuitous and does not meet the definition of 'occurrence' under a CGL policy."

{¶ 21} Because *Westfield* is controlling and is directly on point concerning coverage for claims of defective construction or workmanship, we conclude that the Motorists CGL policy did not provide coverage for Zimmerman's faulty workmanship because it was not an "occurrence" under the policy. Although Blue Water has pointed to cases with contrary holdings, those cases are from other jurisdictions. We are obligated to follow the Ohio Supreme Court's holding in *Westfield*. Because Blue Water cannot show that there is coverage under the policy for faulty workmanship, we need not procced to interpret the policy's exclusions.

{¶ 22} We find Blue Water's second assignment of error not well-taken.

**B. Consequential Damages**

{¶ 23} In its first assignment of error, Blue Water argues that Zimmerman's faulty workmanship caused consequential damages that are covered as an "occurrence" under the CGL policy. It maintains that the faulty workmanship performed by Zimmerman left its buildings continuously exposed to harsh wind and rain, allowing water to collect in the exterior and interior walls of the buildings, directly causing damage to its property. Blue Water insists that Zimmerman's faulty workmanship "created the opportunity for this accident to occur" and caused "derivative damages" that are covered under the CGL policy. It maintains that the trial court focused only on the faulty workmanship and

11.

ignored the accidental consequences of that faulty workmanship, which it claims constituted an "occurrence" under the policy.

{¶ 24} Motorists does not dispute that under some circumstances, consequential damages may be covered by the CGL policy. It agrees that while a CGL policy will not provide coverage if faulty workmanship *is* the accident, it may provide coverage if faulty workmanship *causes* the accident and there is collateral damage to property other than the insured's work product. It claims, however, that Blue Water did not plead a claim for consequential damages. Rather, it claimed for the first time in its motion for partial summary judgment that "the improper installation of the siding is an occurrence which caused the condos to have continuous and repeated exposure to the harsh winds and rain of Lake Erie Shore" and "the water intrusion was accidental and led to damages described in the Complaint." Motorists insists that Blue Water offered no affirmative evidence to support its argument about water intrusion—it cited no expert report, no deposition testimony, and no interrogatory answers, and it provided no photos to support its claim that the buildings were damaged by water intrusion.

{¶ 25} First, we agree with Motorists that the gravamen of Blue Water's amended complaint is that Zimmerman's faulty workmanship itself produced the damage to Blue Water's buildings. Blue Water did not specifically plead a claim for consequential damages or describe damages other than the faulty workmanship itself. It alleged that Zimmerman improperly installed the siding, breached implied warranties and representations by failing to employ proper construction techniques, breached the parties'

12.

contract by failing to properly install the siding, performed work that fell below the requisite standard of care, and failed to properly install the siding by using the wrong nails. Its only reference to consequential damages is in paragraph 26 of the amended complaint, where it alleged that "the Motorists Policy affords comprehensive general liability for claims or suits arising of [sic] out of their insureds' and additional insureds' operations, the operations of their employees and agents, and consequential damages relating to their work at the Project site." Even then, it did not claim consequential damages or describe damages that may be deemed consequential. It stated merely that the defective workmanship in installing the siding caused the siding to fail at an accelerated rate.

{¶ 26} Blue Water cites *JTO v. State Auto. Mut. Ins. Co.*, 2011-Ohio-1452 (11th Dist.) as support for its position that water intrusion caused by defective workmanship is an "occurrence" under a CGL policy. We do not disagree with this proposition. *JTO*, in fact, held that "[u]nder an appropriate set of facts, the water infiltration *can* be an "occurrence[.]" *Id.* at ¶ 35. But *JTO* is distinguishable for at least two reasons. First, the complaint in *JTO* specifically alleged that "shortly after opening, the hotel 'began to experience water infiltration in numerous places throughout the structure, including in entrance ways and guest rooms, resulting in damages to walls and ceilings.'" *Id.* at ¶ 5. It sought damages in the amount of $609,000—the cost of repairing the damage caused by the water infiltration. Second, procedurally, it was a 12(C) motion testing the legal claims—not a motion for summary judgment. *Id.*

13.

**{¶ 27}** Blue Water's complaint lacks allegations describing consequential damages. The summary-judgment briefing was the first time it described water infiltration resulting from Zimmerman's work.

**{¶ 28}** Ohio requires only notice pleading. *Maternal Grandmother v. Hamilton Cnty. Dept. of Job & Family Services*, 2021-Ohio-4096, ¶ 10, citing *Wells Fargo Bank N.A. v. Horn*, 2015-Ohio-1484, ¶ 13. This means that with few exceptions, a party is not expected to plead a claim with particularity. *Id.,* citing Civ.R. 8(A). But the insurer's "duty to defend is determined by the scope of the allegations in the complaint." *Ward,* 2011-Ohio-3176, at ¶ 19. "If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action." *Id*. As such, the initial hurdle Blue Water faced here was to demonstrate to Motorists that it owed indemnity and defense obligations by pleading a claim that would trigger those obligations. While perhaps not required under Ohio's civil rules, from a practical perspective, pleading with additional specificity may have benefited Blue Water here.

**{¶ 29}** But even ignoring the fact that consequential damages were not specifically pled or described in the complaint, to defeat Motorists' motion for summary judgment or to prevail on its own summary-judgment motion Blue Water needed to put forth summary-judgment-quality evidence to show that its claims fall within the policy's coverage.

14.

{¶ 30} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Moreover, a plaintiff cannot survive summary judgment by relying on the bare allegations in its pleadings and responsive memoranda. *Knoke v. State Aerial Farm Statistics, Inc,* 1983 WL 6949, *2 (6th Dist. Sept. 23, 1983).

{¶ 31} Here, Blue Water, the party advocating for coverage (or Zimmerman, the insured) bore the burden of showing that there was insurance coverage applicable to Blue Water's claims. *Ironics, Inc.,* 2022-Ohio-841, at ¶ 14. Once Motorists challenged coverage with support from the insurance contract, reference to the language of the amended complaint, and citation to binding case law, Blue Water could not simply rely on the arguments of counsel to show that in addition to the faulty workmanship itself, it suffered consequential damages (specifically, water damage) caused by the faulty workmanship—it was required to present evidence. The only evidence attached to Blue Water's summary-judgment briefing was the contract between Blue Water and Zimmerman and the insurance policy. Blue Water referenced an expert report in its briefing, but we have reviewed the record carefully and determined that the expert report (properly authenticated or otherwise) is not contained in the record. Nor is any other Civ.R. 56(C) evidence, such as affidavits, deposition transcripts, or stipulations. As such, Blue Water failed to set forth specific facts—supported by summary-judgment-quality

15.

evidence—showing that there was a genuine issue for trial that coverage was available under the CGL policy. And because Blue Water failed to show that coverage was available, we need not consider whether any exclusion applied to preclude coverage.

{¶ 32} We find Blue Water's first assignment of error not well-taken.

## C. Additional Insured

{¶ 33} In its first assignment of error, Zimmerman argues that Blue Water is an "additional insured" under the CGL policy.[1] The crux of Zimmerman's argument is that limiting coverage to Blue Water only for claims of vicarious liability would destroy the purpose of the agreement between Blue Water and Zimmerman. The purpose of the agreement, Zimmerman explains, was to provide additional coverage to Blue Water. Zimmerman disputes Motorists' contention that Blue Water's "additional insured" status "does not apply to property damage occurring after all work has been performed." Zimmerman also contends that Blue Water's damages do not constitute "property damage" as defined in the policy.

{¶ 34} Motorists responds that its coverage obligation to additional insureds is limited by the language in the insurance policy issued to Zimmerman. It maintains that the clear and unambiguous policy language states that additional insured status is limited to claims asserted by third parties under the CGL coverage—Blue Water is not a first-

---

[1] Although not assigned as a separate error, Zimmerman also argues that the trial court erred in finding that there was no "occurrence" that triggered coverage here. We addressed this issue in discussing Blue Water's assignments of error and will not repeat it here.

16.

party insured for property damage covered under the policy. Motorists insists that the "additional insured" provision protects the additional party from liability for the acts or omissions of the named insured. In other words, the additional insured is protected where it may be secondarily liable for the named insured's conduct. Here, Motorists argues, Blue Water's claim for coverage as an additional insured does not arise from a claim that *it* is liable for property damage arising from the acts or omissions of Zimmerman, therefore, Blue Water is not entitled to coverage as an additional insured for the claims asserted in this litigation.

{¶ 35} Coverage for an "additional insured" is described in the following provision of the CGL policy:

> IX. ADDITIONAL INSURED — AUTOMATIC STATUS BY CONTRACT, AGREEMENT OR PERMIT
>
> This coverage modifies insurance provided under the Commercial General Liability Form.
>
> A. Who is an insured (Section II) is amended to include as an additional insured any person . . . when you and such person have agreed, because of a written contract, written agreement, or permit that such person . . . be added as an additional insured on your policy. Such person . . . is an additional insured *only* with respect to *liability* for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
>> 1. *Your* acts or omissions or the acts or omissions of those acting on your behalf in the performance of your ongoing operations; or
>>
>> 2. In connection with *your* ownership, maintenance or use of premises owned by you.

17.

(Emphasis added.) As used in the policy, "your" refers to the named insured—Zimmerman.

{¶ 36} The policy further sets forth exclusions with respect to the insurance afforded to additional insureds:

> B. This insurance does not apply to:
>
> . . .
>> a. "[P]roperty damage" occurring *after*:
>>
>>> (1) *All work*, including materials, parts, or equipment furnished in connection with such work, on the project (other than service, maintenance, or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations *has been completed*; or
>>>
>>> (2) That portion of "your work" from which the . . . damage results *has been put to its intended use* by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(Emphasis added.)

{¶ 37} First, in an effort to avoid the exclusion for work that has been completed, Zimmerman claims that Blue Water's damages do not constitute "property damage." Zimmerman maintains that "property damage" is defined in the CGL policy under Exclusion J, at page 4, paragraph (j) to mean "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." It argues that Blue Water's damages are not "property damage" because the damage to its

18.

property "occurred over the years from water damage from allegedly faulty installation of siding, not damage to the actual siding itself."

{¶ 38} Exclusion J does not define "property damage." "Property damage" is defined in the section of the CGL policy entitled "DEFINITIONS" (pages 15-16, paragraph 17 of the policy, recited above in our discussion of Blue Water's second assignment of error). What Zimmerman cites to is an *exclusion* in the policy for certain *kinds* of property damage. We reject Zimmerman's assertion that the damages alleged by Blue Water are not "property damage" for purposes of the exclusion contained in IX(B)(2)(c)(1).

{¶ 39} Second, in an effort to overcome the fact that IX(A) provides coverage only for *liability* claims brought against the "additional insured," Zimmerman claims that Motorists' application of this provision destroys the purpose of the agreement between Blue Water and Zimmerman.

{¶ 40} "An additional insured endorsement in a policy is construed as part of the policy" under the usual principles of contract interpretation. *Lexington Ins. Co. v. DunnWell, LLC,* 2016-Ohio-5311, ¶ 42 (9th Dist.). Ohio courts have described an additional-insured provision as one "intended to protect the additional party from liability for the acts or omissions of the primary insured." *Sprouse v. Kall,* 2004-Ohio-353, ¶ 16 (8th Dist.).

{¶ 41} In *Davis v. LTV Steel Co.,* 128 Ohio App.3d 733, 737 (11th Dist.1998), for instance, LTV was named an "additional insured" under a policy maintained by Shafer.

19.

Two Shafer employees were injured while working at LTV's facility, and they sued LTV. LTV maintained that as an additional insured under Shafer's policy, that policy provided coverage for the employees' claims. The Eleventh District disagreed. It explained that "[t]he plain language of the endorsement extended coverage to LTV only with respect to liability arising out of Shafer's operations or premises owned by or rented to Shafer." *Id.* It found that "[t]he phrase 'arising out of your operations' in the endorsement was intended to protect LTV from any liability for the negligence of Shafer's employees who would be performing the industrial cleaning at the LTV plant." *Id.* "In other words, the purpose of the additional-insured endorsement was to protect the additional insured (*i.e.,* LTV) from being vicariously liable for the tortious acts of the named insured (*i.e.,* Shafer)." *Id.*

{¶ 42} Here, notwithstanding the agreement between Blue Water and Zimmerman, the policy language and Ohio case law make clear that the "additional insured" provision protected Blue Water from liability to third parties for the acts or omissions of Zimmerman— that is, Blue Water was protected from secondary liability for Zimmerman's conduct. Blue Water was an additional insured only under the CGL policy and only as specifically described in section IX(A). The provision did not enable Blue Water to make a claim for first-party property damage.

{¶ 43} We find Zimmerman's first assignment of error not well-taken.

20.

## D. Duty to Defend

{¶ 44} In its second assignment of error, Zimmerman argues that Motorists Mutual owes a duty to defend it against the action filed by Blue Water. It maintains that the allegations in Blue Water's amended complaint triggered the duty to defend. It further claims that because the issue of coverage is an issue of fact, it must be submitted to a jury and not disposed of on summary judgment.

{¶ 45} Motorists acknowledges that the scope of the allegations in a complaint determines whether the insurance company owes a duty to defend its insured, but it claims that the insurer may be absolved of its duty if the facts uncovered during discovery demonstrate that there is no possibility of coverage under the policy. For the reasons discussed above, Motorists insists that Blue Water's claims fall outside the scope of coverage, therefore, it owes no duty to defend Zimmerman.

{¶ 46} The scope of Motorists' duty to defend is set forth in the CGL policy as follows:

SECTION 1-COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. We may, at our discretion, investigate

any "occurrence" and settle any claim or "suit" that may result. . . .

{¶ 47} As we alluded to earlier in this decision, "[t]he duty to defend is determined by the scope of the allegations in the complaint." *Ward.,* 2011-Ohio-3176, at ¶ 19. "If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action." *Id.* If, however, "all the claims are clearly and indisputably outside the contracted coverage, the insurer need not defend the insured." *Id.* And even once a defense is accepted, an insurer may seek to clarify the nature of the claim to determine whether it falls within the coverage provided in the policy. *Helman v. Hartford Fire Ins. Co.,* 105 Ohio App.3d 617, 625 (9th Dist. 1995), citing *Willoughby Hills v. Cincinnati Ins. Co.,* 9 Ohio St.3d 177, 180 (1984). If it is determined that there is no longer a possibility of coverage under the policy, the insurer will be absolved of its duty to defend. *See id.*; *Fireman's Fund Ins. Co. v. Hyster-Yale Group, Inc.,* 2019-Ohio-1522, ¶ 19 (8th Dist.); *Agee v. Hofelich,* 1995 WL 695087, *3 (3d Dist. Nov. 22, 1995).

{¶ 48} Here, regardless of whether the amended complaint stated a claim that potentially or arguably fell within the liability insurance coverage, it has now been determined that the claim is *not* covered under the policy. Once that determination was made, Motorists' duty to defend ceased.

{¶ 49} Accordingly, we find Zimmerman's second assignment of error not well-taken.

22.

### III. Conclusion

**{¶ 50}** Although consequential damages *may* be covered under a CGL policy, in its summary-judgment briefing, Blue Water failed to proffer the type of evidence required under Civ.R. 56(C) and (E) to show that it incurred potentially-covered consequential damages. We find its first assignment of error not well-taken.

**{¶ 51}** Binding Ohio Supreme Court precedent interpreting identical policy language makes clear that faulty workmanship is not an "occurrence" covered by a CGL policy. We find Blue Water's second assignment of error not well-taken.

**{¶ 52}** Blue Water was an "additional insured" under the CGL policy only with respect to third-party claims for liability caused by Zimmerman's acts or omissions. It was not an "additional insured" that could make a claim for first-party property damage. We find Zimmerman's first assignment of error not well-taken.

**{¶ 53}** Once it was determined that coverage was not available under the CGL policy, Motorists' duty to defend ceased. We find Zimmerman's second assignment of error not well-taken.

**{¶ 54}** We affirm the March 20, 2024 judgment of the Sandusky Court of Common Pleas. Blue Water and Zimmerman are ordered to pay the costs of their appeals under App.R. 24.

Judgment affirmed.

23.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.