**[Cite as *Erie Ins. Co. v. F Street Invests., L.L.C.*, 2025-Ohio-4729.]**

## IN THE COURT OF APPEALS OF OHIO
### SIXTH APPELLATE DISTRICT
### LUCAS COUNTY

| | |
|---|---|
| Erie Insurance Co. | Court of Appeals No.  L-24-1270 |
| Appellee | Trial Court No.  CI0202301281 |
| v. | |
| F Street Investments, LLC | **DECISION AND JUDGMENT** |
| Appellant | Decided: October 14, 2025 |

* * * * *

C.J. Schmidt and Daniel A. Cox, for appellant.

R. Brian Borla, for appellee.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant, F Street Investments, LLC, appeals a judgment from the Lucas County Court of Common Pleas dismissing the declaratory judgment action in favor of Erie Insurance Co. after finding that F Street failed to prove loss, or entitlement to damages, following an evidentiary hearing.  For the foregoing reasons, the judgment is affirmed.

## I. Facts and Procedural Background

{¶ 2} MR DLB Property's [sic] LLC is an Ohio limited liability company engaged in the business of property restoration and renovation. MR DLB executed a mortgage on three properties, including the real property located at 759 Oak Street, Toledo, Ohio 43605 ("the Property"), as security for payment on a note issued by mortgagee F Street. As a condition of the mortgage, MR DLB obtained commercial liability insurance coverage with Erie, through its agent, McQuire Group, effective May 16, 2022. The insurance policy provided $908,100 in replacement/repair property coverage and listed F Street as first mortgagee.

{¶ 3} On June 26, 2022, the Property sustained fire damage. MR DLB submitted a claim reflecting a total loss for the Property. Erie disputed the claim.

{¶ 4} On January 23, 2023, Erie filed a complaint seeking a declaration of its rights and obligations under the policy it issued to MR DLB; it named F Street as first mortgagee on the Property. Erie requested a determination as to whether Erie owes coverage for any damage to the Property and whether the policy is void *ab initio* due to false warranties provided by MR DLB. Erie's complaint included a jury demand.

{¶ 5} Erie's coverage dispute stemmed from the following policy language:

**AGREEMENT**

In return for your timely payment and your compliance with all the provisions of this policy, we agree to provide the coverages you have purchased. Your coverages and limits of protection are shown in the Declarations, which are a part of this policy.

2.

This agreement is made in reliance on the information you have given us, including the statements made in the application which are incorporated into and made a part of this policy.

. . .

**GENERAL POLICY CONDITIONS**

. . .

4. Concealment, Fraud, Misrepresentation, and Breach of Warranty

This entire policy is void if before or after a loss any insured has intentionally concealed or misrepresented any material fact or circumstance concerning this insurance.

All statements made by you on the application (which is expressly incorporated as part of this policy) constitute warranties and not mere representations. The falsity of any statement made by you or on the application renders this policy void back to its inception regardless of whether the false statement was in any way related to the cause of any loss.

In the event of a fraudulent claim, we will not make payment for the loss.

{¶ 6} MR DLB filed an answer and counterclaim alleging breach of contract and bad faith due to Erie's failure to promptly pay the claim. F Street counterclaimed requesting that the court declare the existence of a valid, enforceable contract between the parties and find that Erie breached the contract with MR DLB by refusing to pay the full amount of benefits available for the covered loss.

{¶ 7} F Street relied on the policy's mortgage clause which provided:

10. **MORTGAGEE**

"Loss" shall be payable to mortgagees named in the "Declarations", to the extent of their interest and in the order of precedence.

3.

**Our Duties**

We will:

a. Protect the mortgagee's interest in an insured building. This protection will not be invalidated by any act or neglect of the insured, any breach of warranty, increase in hazard, change of ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and

b. Give the mortgagee thirty (30) days notice before cancellation or refusal to renew this policy.

**Mortgagee's Duties**
The mortgagee will:

a. Furnish proof of "loss" within sixty (60) days if you fail to do so;

b. Pay upon demand any premium due if you fail to do so;

c. Notify us of any change in ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

d. Give us his or her right of recovery against any party liable for "loss". This shall not impair the right of the mortgagee to recover the full amount of the mortgage debt; and.

e. After a "loss", permit us to satisfy the mortgage requirements and receive full transfer of the mortgage and all "securities" held as collateral to the mortgage debt.

Policy conditions relating to **APPRAISAL**, **LOSS PAYMENT**, and **SUITS AGAISNT US** apply to the mortgagee.

"Loss," as defined in the Policy, means "direct and accidental 'loss' of or damage to covered property.

{¶ 8} The revised version of the "**LOSS PAYMENT**" clause appearing in the

Ohio Property Change Endorsement and appended to the policy states:

4.

We will adjust all "losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. We will not pay you more than your financial interest in the covered property.

. . .

We have the option to:

1. Pay the value of that part of the damaged property;

2. Pay the cost to repair or replace that part of the damaged property, but this does not include the increased cost of construction due to enforcement of or compliance with any ordinance or law regulating the construction or repair of the damaged building;

3. Take all or part of the damaged property at an agreed or appraised value; or

4. Repair or replace that part of the damaged property with material of like kind and quality, but this does not include the increased cost of construction due to enforcement of or compliance with any ordinance or law regulating the construction or repair of the damaged building.

We will not pay more than the Amount of Insurance shown in the "Declarations" applicable to the damages or destroyed property.

{¶ 9} F Street filed a third-party complaint against MR DLB alleging that it breached their contract by failing to name F Street as an additional insured under the policy. F Street included a jury demand.

{¶ 10} Following discovery, the parties all moved for summary judgment. Reviewing Erie and MR DLB's cross-motions for summary judgment, the trial court determined that Erie demonstrated, and MR DLB did not refute, that the insurance application contained numerous false representations and statements thus, as to MR DLB, the policy was void at its inception. On this basis, the court granted summary judgment

5.

in favor of Erie and denied MR DLB's motion on its bad faith claim, dismissing the counterclaims with prejudice.

{¶ 11} Erie moved for summary judgment against F Street based on the derivative nature of F Street's claim as mortgagee. F Street conversely maintained that it was entitled to damages under the policy's standard mortgage clause which insulated F Street against the fraudulent acts MR DLB.

{¶ 12} Reviewing Erie's and F Street's summary judgment motions, the trial court concluded that F Street, as first mortgagee, was entitled to payment under the policy's mortgage clause. The court further determined that the amount of the loss was "not undisputed," that it would conduct a hearing on the matter, and that following the hearing it would enter judgment in favor of F Street.

{¶ 13} The parties then submitted briefs addressing the correct measure of damages. Erie maintained that F Street, as mortgagee, stands in the same position as the mortgagor, and pursuant to the policy's terms, its recovery was limited to repair or replacement damages. F Street conversely claimed under the terms of the policy, it could recover to the extent of the $450,000 mortgage debt.

{¶ 14} On August 7, 2024, the trial court issued a judgment entry concluding that the replacement cost is the proper measure of damages based on the policy's Declarations page. Also, that F Street's entitlement to the proceeds "to the extent of the debt owed" does not necessarily translate to the full amount of the mortgage debt. As dictated by the express terms of the policy, the recoverable amount still needed to be proven.

6.

{¶ 15} The trial court conducted a damages hearing on October 17, 2024. F Street presented two witnesses. Commercial real estate appraiser Brian Fischer completed a replacement cost estimate for the Property and determined the replacement cost to be $445,000. He reached his conclusion by utilizing a standard cost appraisal manual, observing and photographing the exterior of the building, and reviewing the Lucas County Auditor's website for facts such as the Property's square footage. Fischer's August 30, 2024 report was admitted into evidence.

{¶ 16} Tyler Gryczka, an F Street asset manager, testified that the company provides "fix and flip" loans. Gryczka stated that the original mortgage on the Property was $223,000, and that the current total pay-off was $447,146.11. Noting that he had been employed by F Street for only three months, Gryczka could not explain where the pay-off sum came from or whether the amount represented the sum for all three properties MR DLB purchased and, if so, what part of the balance to attribute to the Property. Gryczka admitted that he lacked knowledge of the condition of the Property before or following the fire, the damages caused by the fire, or the cost to repair the Property.

{¶ 17} Following F Street's presentation of evidence, Erie moved to dismiss the case, arguing that F Street failed to establish the amount it owed under the policy. Erie asserted that evidence of replacement costs, without first establishing that the Property was a total loss, is not the proper measure of damages. F Street countered that as mortgagee, it was entitled to receive the full amount of the debt owed by MR DLB.

7.

{¶ 18} On October 25, 2024, the court entered judgment dismissing F Street's counterclaim. It rejected F Street's argument that it was entitled to damages equal to the full amount of the mortgage debt and concluded that because it failed to provide evidence of loss as required under the policy, it could not recover. The court reasoned that while F Street's expert presented evidence regarding the payoff on the mortgage, $450,000, and the replacement cost of the Property, $454,000, he failed to demonstrate that the damages to the Property necessitated a rebuild, the condition of the Property prior to the fire, and whether the replacement items valued in the expert's testimony and report even existed in the Property prior to the fire. This appeal followed.

## II. Assignments of Error

{¶ 19} F Street raises three assignments of error on appeal:

**First Assignment of Error**: The trial court erred when it held that appellee Erie Insurance Company was not required to pay appellant F Street Investments, LLC the full amount of F Street Investments, LLC debt.

**Second Assignment of Error**: The trial court erred when it held the damages hearing to the bench and not to a jury.

**Third Assignment of Error**: The trial court erred when it relied on evidence not admitted at trial.

## III. Analysis

## A. Loss Damages

{¶ 20} F Street's first assignment of error is that the trial court erroneously dismissed its counterclaim on the basis that it failed to provide evidence of loss. F Street contends it is entitled to the full sum of the mortgage debt because the policy includes a

8.

standard mortgage clause creating a separate agreement between the insurer and mortgagee. F Street asserts that this separate agreement insures distinct interests, its being the entire balance of the debt owed by the insured.

{¶ 21} This case involves the interpretation of an insurance policy, a contract between an insurer and an insured, which is generally interpreted in the same manner as other types of contracts. *Blue Water Condominium Assn., Inc. v. Motorists Mut. Ins. Co.*, 2025-Ohio-772, ¶ 13 (6th Dist.). A reviewing court considers the contract as a whole and gives effect to the parties' intent as reflected in the language used. *Id.* The court "'appl[ies] the plain meaning of policy's language "unless another meaning it clearly apparent from the contents of the policy"'" *Id.*, quoting *Motorists Mut. Ins. Co. v. Ironics, Inc.*, 2022-Ohio-841, ¶ 8, quoting *Westfield Ins. Co. v. Galatis*, 2002-Ohio-5849, ¶ 11.

{¶ 22} The entitlement to damages under an insurance policy concerns a question of law which this court reviews de novo. *Buehrer v. Meyers*, 2020-Ohio-3207, ¶ 13 (6th Dist.), citing *Sauer v. Crews*, 2014-Ohio-3655, ¶ 10; *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 2002-Ohio-2842, ¶ 4.

{¶ 23} The policy at issue contains a standard mortgage clause which operates "as a separate contract between the insurer and the mortgagee, which makes the mortgagee an independent insured." *Ltd. Invest. Group Corp. v. Huntington Natl. Bank*, 2022-Ohio-3657, ¶ 84 (10th Dist.). "Under such a mortgage clause, the mortgagee is entitled to the insurance proceeds to the extent that they are equal to the debt owed by the property

9.

owner under the mortgage[.]" *Id.* A standard mortgage clause allows a mortgagee to recover despite the mortgagor's conduct with the insurer. *Barwick v. State Farm Fire & Cas. Ins. Co.*, 2011-Ohio-5689, ¶ 18 (2d Dist.). It also entitles the mortgagee to priority payment of the insurance proceeds following a loss up to the amount of the debt owed by the mortgagor. *Ltd. Invest. Group Corp.* at ¶ 84.

{¶ 24} Section 10 of the policy states: "'Loss' shall be payable to mortgagees named in the 'Declarations', to the extent of their interest and in the order of precedence." F Street contends that this section entitles it to the balance of the mortgage debt. The section further provides, as set forth above, that the mortgagee has the duty to furnish proof of loss if the insured fails to do so and, importantly, that: "Policy conditions relating to APPRAISAL, LOSS PAYMENT, and SUITS AGAINST US apply to the mortgagee."

{¶ 25} The policy defines "loss" as "direct and accidental 'loss' of or damage to covered property." It also specifies that the Property's coverage was for "replacement cost" which restricts payment to damaged or destroyed property actually repaired or replaced and limits recovery to the lesser of the amount of insurance applicable to the damaged property, the costs or replacement, or the amount actually spent in repairing or replacing the property.

{¶ 26} Here, the cases F Street relies on do not support its position that it is entitled to the full amount of its mortgage debt. For example, in *Ltd. Invest. Group Corp.*, *supra*, the mortgage debt exceeded $500,000 at the time of the loss; the appellate

10.

court affirmed the trial court's judgment that the mortgagee was entitled to $140,000 in insurance proceeds which it applied to reduce the mortgagor's indebtedness. *Id.* at ¶ 87.

{¶ 27} Similarly, in *State ex rel. Squire v. Royal Ins. Co.*, 58 Ohio App. 199 (8th Dist. 1938), the insured property sustained damage from a fire while it was encumbered by a mortgage of approximately $6,700. It was determined, however, that the loss or damage sustained amounted to $5,300. In awarding the mortgagee the full loss amount, the court of appeals held that "[w]here a fire insurance policy contains a standard mortgage clause in favor of mortgagee, [and] the loss being less than the amount of the mortgage, the mortgagee is… entitled to the proceeds and may decide whether the money is to be applied to the mortgage obligation or is to be used to repair the premises."

{¶ 28} A mortgagor maintains insurance on a mortgaged property to safeguard a mortgagee's security, not create a potential windfall where the balance of the mortgage far exceeds the extent of the covered property's damage. It follows that payment under the policy be related to the actual loss sustained by the covered Property. Here, F Street failed to present any evidence on the extent of damage to the Property, the cost to repair the Property, or whether the Property was, in fact, a total loss. Accordingly, the trial court did not err when it dismissed the action. F Street's first assignment of error is not well-taken.

### B. The Right to a Jury Trial

{¶ 29} In its second assignment of error, F Street contends that the court committed reversible error when it failed to conduct a jury trial on the issue of damages.

11.

F Street asserts that both Erie and F Street submitted jury demands which were not waived. Erie counters that because F Street knew of and yet failed to raise the issue below, it cannot be raised for the first time on appeal. Erie also claims that F Street's participation in the hearing waived any error.

{¶ 30} Civ.R. 38 grants a litigant the right to a jury trial upon request and once exercised, it may be withdrawn only by the consent of the parties. This rule, however, is not absolute and a party, through action or inaction, may waive a jury demand absent formal withdrawal. Indeed, the right to a jury trial may be waived where a civil litigant fails to object to a bench trial and then fully participates in the trial. *Nenadal v. Landerwood Co.*, 1994 WL 189375, *4 (8th Dist. May 12, 1994). In *Nenadal*, the court examined federal cases construing an analogous rule. The court noted:

> We take notice of and rely upon the construction given this issue by federal courts, including the Sixth Circuit in construing the identical language of Fed.R.Civ.Proc. 39. They have held that the right to a jury may be waived by failing to object to a bench trial and subsequently fully participating in the trial. *See, Royal American Managers, Inc. v. IRC Holding Corp.* (C.A. 2 1989), 885 F.2d 1011, 1018; *Root v. Consolidated Freightways* (C.A. 6 1987), 835 F.2d 879, LEXIS 15721, citing, *United States v. 1966 Beechcraft Aircraft Model King Air* (C.A. 4 1985), 777 F.2d 947, 950-51. The federal courts also hold that Fed.R.Civ.Proc. 38 and 39(a), from which the Ohio rules are taken, are not to be strictly interpreted. *See, e.g., Bass v. Hoagland* (C.A. 5 1949), 172 F.2d 205, 209, cert. denied, 338 U.S. 816 ("in a civil case a waiver [of the right to a jury trial after demand] is shown by mere acquiescence, when the party or his counsel is present and not objecting."); *see, also, Southland Reship Co. v. Flegel* (C.A. 5 1976), 534 F.2d 639, 645; *National Family Insurance Co. v. Exchange National Bank* (C.A. 7 1973), 474 F.2d 237, 241, cert. denied, 414 U.S. 825. These courts believe the better rule is to recognize that "[t]he right to [a] jury trial may * * * be waived by [the] conduct * * * of the parties." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2321 (1971).

12.

{¶ 31} The court also relied on the "familiar rule that a party waives his right to raise for the first time on appeal that error which was not raised at the trial below" explaining that "it would be 'patently unfair' and, 'in effect, [an] "ambush [of the] trial judge" on appeal' if appellant were allowed 'to lodge an early demand for a jury,' participate in a bench trial without objection, and then assign as error the failure to honor the jury demand." *Id.*, quoting *Royal Am. Mgrs., Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1018 (C.A. 2 1989).

{¶ 32} The Eighth Appellate District reaffirmed its holding in *Nenadal* in a declaratory action involving the administration of an estate when it found that the defendant waived his jury trial demand by "not objecting or raising the issue in a timely fashion." *Toma v. Toma*, 2003-Ohio-4344, ¶ 33 (8th Dist.)*; see also Goddard v. Goddard*. 2011-Ohio-680, ¶ 19-22 (4th Dist.) (Appellant waived his right to a jury trial, in part, by failing to object to the bench trial); *Abbe Family Found. & Trust v. Portage Cty. Sheriff*, 2006-Ohio-2497, ¶ 47-48 (11th Dist.) (Following a summary judgment award, an unobjected to bench trial on damages waived the error.).

{¶ 33} Here, the parties, represented by competent counsel, engaged in extensive discovery, settlement discussions, pretrial hearings, and briefing. Following the trial court's award granting F Street's motion for summary judgment, the trial court ordered the parties to brief the issue of the proper measure of damages to be applied. In its August 7, 2024 judgment entry setting replacement cost as the proper measure of damages, the court scheduled the damages hearing for October 14, 2024. Without

13.

objection, F Street presented evidence and otherwise participated in the hearing. Based on the foregoing, F Street waived its right to a jury trial. F Street's second assignment of error is not well-taken.

## C. Damages Hearing Evidence

{¶ 34} F Street's third and final assignment of error contends that the trial court's judgment entry erroneously relies on facts not presented during the damages hearing. Reviewing the judgment entry, the "facts" F Street complains of include background information (clearly identified as such) that had been developed through prior judgment entries during the course of the proceedings. There is no indication that the court improperly relied on evidence outside the hearing record in considering whether F Street sustained its burden to demonstrate the amount of damages to which it was entitled.

{¶ 35} Civ.R. 56(D) provides:

> (D) Case Not Fully Adjudicated Upon Motion. If on motion under this rule summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court in deciding the motion, shall examine the evidence or stipulation properly before it, and shall if practicable, ascertain what material facts exist without controversy and what material facts are actually and in good faith controverted. The court shall thereupon make an order on its journal specifying the facts that are without controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action *the facts so specified shall be deemed established*, and the trial shall be conducted accordingly.

(Emphasis added.) Additionally, a damages hearing held in the same proceeding is considered a continuation of the proceeding. *Hunsche v. Loveland*, 133 Ohio App.3d 535, 542 (1st Dist. 1999). In the present case, the trial court specifically found that the

14.

only issue in dispute was the amount of damages owed to F Street; all other issues were resolved though summary judgment. F Street's third assignment of error is not well-taken.

## IV. Conclusion

{¶ 36} Based on the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, F Street is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Myron C. Duhart, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.